UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Case No. 3:04CR301(JCH) |
| | : | |
| v. | : | |
| | : | |
| BABAR AHMAD | : | OCTOBER 12, 2012 |

## MOTION TO CONSOLIDATE SEPARATE INDICTMENTS FOR TRIAL

Pursuant to Rule 13 of the Federal Rules of Criminal Procedure, the government hereby moves to consolidate the indictment in this case with the indictment in *United States v. Syed Talha Ahsan*, 3:06CR194(JCH), so that they may be tried together as though brought in a single indictment.

### Background

*The Indictment of Babar Ahmad*

On August 5, 2004, the defendant, Babar Ahmad ("Ahmad") was arrested by British law enforcement authorities in London on terrorism-related charges set forth in an arrest warrant and criminal complaint issued by United States Magistrate Judge William I. Garfinkel in the District of Connecticut on July 28, 2004.

On October 6, 2004, a federal grand jury sitting in Bridgeport, Connecticut returned a four-count indictment charging Ahmad with Conspiring to Provide Material Support to Terrorists, in violation of 18 U.S.C. §§ 2339A and 371; Providing Material Support to Terrorists, in violation of 18 U.S.C. § 2339A; Conspiring to Kill Persons in a Foreign Land, in violation of 18 U.S.C. §  956, and Money Laundering, in violation of 18 U.S.C. § 1956(h).

Ahmad was charged with various terrorism-related offenses stemming from his alleged operation of a terrorism support cell in London that supported the Chechen mujahideen, the Taliban and associated terrorist groups, including Al Qaeda.

One of the means for providing that support was the alleged operation of a series of then-pre-eminent, world-wide jihadi websites produced under the name of "Azzam Publications," which, for a period of time, was made possible through the unwitting services of a website hosting company located in Connecticut.  The websites, several of which were operated in English, were among the first of their kind, and between approximately 1996 and 2002, Azzam Publications' sites were the top mujahideen propaganda sites on the Internet, featuring jihadi training manuals, interviews with Al-Qaeda and Chechen leaders and associates, and the stories and martyrdom videos of many fallen jihadists.  The case is not limited to cyberspace, however, as the evidence also includes real-world effects and consequences flowing from the criminal activity, regardless of the media used to plan, coordinate and execute some of the conduct.

Ahmad was the alleged leader of the support cell, which is alleged to have assisted the Chechen mujahideen, the Taliban and associated terrorist groups by providing funds, military items, communications equipment, lodging, training, safe houses, expert advice and assistance, personnel, transportation, false documentation and identification, and other supplies, knowing and intending that such conduct would support the activities of these groups.  Among other things, Ahmad and other members of Azzam Publications are alleged to have engaged in fund raising to support violent jihad and to have recruited and arranged for individuals to travel to Afghanistan to train for violent jihad.  Ahmad and his associates are also alleged to have made

efforts to secure equipment including GPS devices, Kevlar helmets, night vision goggles, ballistic vests and camouflage uniforms.

Also, during a search of Ahmad's residence in London in December 2003, Ahmad was allegedly found in the possession of an electronic document containing what were previously classified plans regarding the advance movements of a United States Naval battle group as it was to transit from California to its deployment in the Middle East. The document also discussed the battle group's makeup, mission and perceived vulnerability to terrorist attack.

In general terms, the government's evidence at trial is anticipated to include, among other things: (1) evidence regarding the operation and administration of the family of Azzam websites, which contained training materials, and overt appeals for donations, personnel, gas masks, and nuclear-biological-chemical suits; (2) evidence regarding the production and distribution of videotapes and compact disks depicting jihadi fighters in Bosnia, Chechnya and elsewhere, and eulogizing killed mujahideen, for the purpose of recruiting individuals and soliciting donations to support the mujahideen in Afghanistan and Chechnya; (3) the purchase of supplies, namely 100 cold weather camouflage suits from a U.S. based company; (4) Ahmad's possession of GPS equipment and a ballistic vest; (5) efforts to assist individuals responding to the websites' calls for support via emails discussing donations, shipments of gas masks, procurement of night vision goggles, safe routes to lands of jihad; and personnel needed; (6) the vetting of individuals on behalf of the Chechen mujahideen; (7) efforts to recruit individuals to travel to Afghanistan to fight with the Taliban against the United States or otherwise train for jihad, and the recovery of detailed corresponding instructions for such travel; (8) possession of the then-classified information regarding the advance movements of a United States Naval battle group and

information regarding its makeup, mission and perceived vulnerabilities; (9) email communications with a U.S. Naval enlistee who was sympathetic to the views expressed on the Azzam sites and praised the attacks on the *U.S.S. Cole*; and (10) the production and distribution of materials supporting violent jihad, such as articles encouraging and justifying "martyrdom operations" and articles about how to train oneself for violent jihad.

*Extradition Proceedings Begin for Ahmad*

A formal request for Ahmad's extradition to the United States was served upon Ahmad in the United Kingdom on October 7, 2004.

On May 17, 2005, following formal extradition proceedings in trial-level courts in the United Kingdom, Senior District Judge Timothy Workman of the Bow Street Magistrates Court ruled that the United States was entitled to the extradition of Ahmad under the applicable treaty and, accordingly, sent the case to the United Kingdom's Home Secretary for a decision whether Ahmad should be extradited to the United States.

On November 15, 2005, the Home Secretary upheld Ahmad's extradition to the United States.

*The Indictment of Syed Talha Ahsan*

In 2006, following further investigation, including computer forensic analysis, investigators linked Syed Talha Ahsan to the alleged conspiracy and material support, and a search of his residence in the United Kingdom occurred.

Subsequently, on June 28, 2006, a separate Bridgeport grand jury returned an indictment charging Syed Talha Ahsan with the same offenses as Ahmad, with the exception of the money laundering count.

4

The government did not supersede and add Syed Talha Ahsan to the already existing indictment against Babar Ahmad because extradition proceedings had already been underway against Babar Ahmad for nearly two years and changing the charging document already pending against Ahmad by seeking the return of a superseding indictment including both Ahmad and Ahsan could have caused the extradition proceedings against Ahmad to begin anew. Accordingly, Ahsan was charged in a separate indictment that closely tracked the existing indictment pending against Ahmad.

Indeed, with the exception of the money laundering count, the indictment returned against Ahsan is virtually identical to the one returned against Ahmad, albeit with some additional allegations, such as overt acts, that are specific to Ahsan.

Specifically, the grand jury returned a three-count indictment charging Ahsan in Counts One through Three with precisely the same charges brought against Ahmad in Counts One through Three of his Indictment – namely, Conspiring to Provide Material Support to Terrorists, in violation of 18 U.S.C. §§ 2339A and 371; Providing Material Support to Terrorists, in violation of 18 U.S.C. § 2339A; and Conspiring to Kill Persons in a Foreign Land, in violation of 18 U.S.C. § 956.

In addition to Ahsan's alleged involvement in some of the same conduct with which Ahmad is charged, Ahsan is alleged to have personally possessed, accessed, modified and re-saved the battle group document in April 2001, before it was later found in Ahmad's possession in December 2003.  Ahsan is also alleged to have personally engaged in efforts to further the administration and operation of the Azzam websites; to provide materials such as Chechnya battle updates for publication on the Azzam sites; and to assist with the "products" distribution

5

efforts of Azzam, which included videos that depicted fighters in Bosnia, Chechnya and elsewhere, and eulogized killed mujahideen, for the purpose of recruiting individuals and soliciting donations to support the mujahideen in Afghanistan and Chechnya.

The government's evidence also includes Ahsan's alleged possession of various materials relating to violent jihad, including numerous Azzam Publications materials; an article regarding "martyrdom operations"; an article regarding when it is appropriate to target women and children; various articles and handwritten notes on how to be secretive in the categories of computers, identification, mail and telephones; and a letter to his father regarding his intention and motivation to go fight again in the jihad.

*Further Extradition Proceedings*

Ahsan was arrested in the United Kingdom on July 19, 2006 and a formal request for his extradition was completed on or about September 11, 2006.

Meanwhile, Ahmad appealed to the United Kingdom High Court, which held hearings in his case from July 11-13, 2006.  On November 30, 2006, the United Kingdom High Court issued its ruling, denying Ahmad's appeal.

In December 2006, Ahmad sought leave to appeal to the House of Lords.  In June 2007, the House of Lords denied Ahmad's request.

Ahmad then sought an appeal to the European Court of Human Rights, which decided that it would consider Ahmad's case.  The European Court of Human Rights requested briefing from the parties and stayed Ahmad's extradition pending review of the case.

In Ahsan's case, on March 19, 2007, United Kingdom District Judge Nicholas Evans ruled that the United States was entitled to the extradition of Ahsan under the applicable treaty

and, accordingly, sent the case to the United Kingdom's Home Secretary for a decision whether Ahsan should be extradited to the United States.  On June 14, 2007, the Home Secretary upheld Ahsan's extradition to the United States.

Ahsan appealed to the United Kingdom High Court, which held hearings in the case from February 19-21, 2008.  On April 10, 2008, the United Kingdom High Court issued its ruling, denying Ahsan's appeal.

On or about April 23, 2008, Ahsan sought leave to appeal to the House of Lords.  The House of Lords denied Ahsan's request.  Ahsan then sought an appeal to the European Court of Human Rights

Ultimately, Ahmad's appeal to the European Court of Human Rights was consolidated, for extradition purposes, with the cases of Syed Talha Ahsan and those of other defendants whose extradition from the United Kingdom to the United States was sought to face terrorism charges pending against them in the Southern District of New York.

On or about July 6, 2010, after extensive briefing from the parties, the European Court of Human Rights issued a decision rejecting certain issues raised by the defendants, while declaring "admissible" the applications of Babar Ahmad, Syed Talha Ahsan  (as well as that of the SDNY defendants) on certain other issues.  Specifically, the Court indicated an intention to address on the merits questions regarding the length of the defendants' possible sentences and conditions of confinement at so-called "supermax" prisons in the United States.

On April 10, 2012, after extensive additional briefing, the European Court of Human Rights issued a ruling holding that Ahmad, Ahsan and others could be extradited, and finding that there would be no human rights violations under the European Convention on Human Rights

as a result of the defendants' possible sentences, or the possibility of confinement within the Bureau of Prisons, should they be convicted at trial.

In July 2012, the defendants filed timely petitions seeking further review by the full or "Grand Chamber" of the European Court of Human Rights – the functional equivalent of *en banc* review.  On September 24, 2012, the European Court of Human Rights issued a decision declining to engage in any further review.

On September 27, 2012, the United Kingdom Home Secretary again approved the defendants' extraditions and declined requests to delay extradition further.

On October 2-4, 2012, the United Kingdom's High Court held hearings that amounted to a final judicial review of the defendants' extraditions.

On October 5, 2012, the High Court issued a written ruling rejecting the defendants' claims against extradition and ordering that the defendants' "extradition to the United States of America may proceed immediately."

Accordingly, on October 5, 2012, law enforcement authorities in the United Kingdom transferred custody of Babar Ahmad and Syed Talha Ahsan to law enforcement agents of the United States and both defendants were then flown from the United Kingdom directly to the District of Connecticut, without any intervening stops.  Ahmad and Ahsan arrived in the District of Connecticut at approximately 2:30 a.m. on October 6, 2012 and had their initial presentment and arraignment before the Court at approximately 8:00 a.m. that same morning.

With the defendants' extraditions now complete, the government now moves to consolidate Ahmad and Ahsan's indictments pursuant to Rule 13 of the Federal Rules of Criminal Procedure so that they may be tried together as though brought in a single indictment.

**Applicable Law**

Rule 13 of the Federal Rules of Criminal Procedure provides that "[t]he court may order that separate cases be tried together as though brought in a single indictment or information if all offenses and all defendants could have been joined in a single indictment or information." Fed. R. Crim. P. 13; *see also United States v. Gordon*, 655 F.2d 478, 485 (2d Cir. 1981).

Rule 8(b) of the Federal Rules of Criminal Procedure governs the question whether defendants "could have been joined in a single indictment." *United States v. Halper*, 590 F.2d 422, 428 (2d Cir. 1978); *see also United States v. Richards*, 94 F. Supp. 2d 304, 308 (E.D.N.Y. 2000). That rule provides:

> Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count.

Fed. R. Crim. P. 8(b); *see also Richards*, 94 F. Supp. 2d at 308.

This standard is met where the acts charged are "unified by some substantial identity of facts or participants, or arise out of a common scheme or plan." *United States v. Attanasio*, 870 F.2d 809, 814 (2d Cir. 1989) (citations and internal quotations omitted). "Rule 8(b) does not permit joinder of defendants solely on the ground that the offenses charged are of 'the same or similar character.'" *United States v. Turoff*, 853 F.2d 1037, 1042 (2d Cir. 1988). But joinder is appropriate where a "reasonable person would easily recognize the common factual elements." *Id*. at 1044; *see also Richards*, 94 F. Supp. 2d at 310.

In applying Rule 13, courts in the Second Circuit have looked beyond the face of the indictment to determine whether joinder is proper. *See, e.g., Halper*, 590 F.2d at 429 (Rule 13

9

joinder of offenses held improper in part on basis of representations at pre-trial hearings and proof at trial); *United States v. Perez*, 574 F. Supp. 1429, 1438 (E.D.N.Y. 1983) (granting Rule 13 motion in part because "the evidence to be introduced at trial will likely be the same for each" defendant); *United States v. DeYian*, No. 94 cr 719, 1995 WL 368445 at *10 (S.D.N.Y. 1995); *see also Richards*, 94 F. Supp. 2d at 309 ("in determining whether to allow separately indicted defendants to be tried together pursuant to Rule 13, the Court may look beyond the face of the indictment to the government's representations of its anticipated proof.").

"In deciding whether separately indicted defendants may be tried together, the court looks to 'the implicit, and often conflicting policies of Rule 13:  the promotion of the economical and efficient administration of criminal justice by the avoidance of needless multiple trials and the protection of criminal defendants from the unfair prejudice that may be caused by the joining of indictments.'" *Richards*, 94 F. Supp. 2d at 310 (quoting *Halper*, 590 F.2d at 428).  In other words, the court must consider whether "there is danger of confusion or of unfair prejudice from the joinder."  *Halper*, 590 F.2d at 428.

"The decision to order two indictments tried together is one to be made in the district court's discretion."  *Halper*, 590 F.2d at 428; *see also United States v. Fancher*, 195 F. Supp. 634, 635 (D. Conn. 1960) ("[t]he universal rule is that the exercise of the power to consolidate is one which lies in the trial court's discretion.").  The "broad discretion of the trial court . . . will not be overturned on appeal absent some showing that the defendant[s] suffered substantial prejudice due to the joint trial."  *United States v. Weisman*, 624 F.2d 1118, 1130 (2d Cir. 1980).

10

**Discussion**

Applying these principles here, consolidation is clearly appropriate because the charges against Ahmad and Ahsan "could have been joined in a single indictment," Fed. R. Crim. P. 13, and because Ahmad and Ahsan "are alleged to have participated . . . in the same series of acts or transactions constituting an offense or offenses." Fed. R. Crim. P. 8(b).

First, other than the addition of Syed Talha Ahsan as a defendant and the addition of certain allegations and overt acts specific to Ahsan, the 2006 indictment against Syed Talha Ahsan and the 2004 indictment against Babar Ahmad are nearly identical in language, scope, alleged conduct and the violations charged. The primary exception is that Babar Ahmad has also been charged in a fourth count with an alleged money laundering conspiracy in violation of 18 U.S.C. §1956(h), while Syed Talha Ahsan has not. The anticipated proof in support of the money laundering conspiracy, however, is anticipated to be co-extensive with the proof in support of the other counts.

Second, the anticipated proof against Ahmad and Ahsan is likely to be the same for each. In general terms, the government's evidence at trial against both Ahmad and Ahsan is anticipated to consist of testimony from virtually the same law enforcement witnesses from the United States and the United Kingdom, as well as expert witnesses and other witnesses. Anticipated additional evidence, such as web pages, email correspondence to and from Azzam Publications email accounts, digital evidence, and physical evidence, including items seized from search locations in the United Kingdom in 2003, 2004 and 2006 is anticipated to be co-extensive or nearly the same for both defendants as well. *See, e.g.*, *Richards*, 94 F. Supp. 2d at 308 ("proof of these allegations against the two defendants will come, almost entirely, from the same evidence"). In

11

short, both the charges and anticipated evidence against Ahmad and Ahsan are co-extensive and overlap to a degree where they clearly share a "substantial identity of facts [and] participants" and "arise out of a common scheme or plan," *Id.* at 310; *Attanasio*, 870 F.2d at 814, such that a "reasonable person would easily recognize the common factual elements." *Turoff*, 853 F.2d at 1042; *Richards*, 94 F. Supp. 2d at 310.

Third, the danger of any prejudicial spillover is minimal.  There are only two defendants with overlapping charges and alleged conduct.  The defendants were allegedly involved in the same conspiracies, and to explain those conspiracies and the defendants' roles in them, the government's case will require the introduction of evidence that would be admissible at both of two separate trials were the court to deny consolidation.  Accordingly, the defendants will not be improperly prejudiced by being tried together.

Relevant case law further supports this conclusion.  In *United States v. Halper*, 590 F.2d 422, 428 (2d Cir. 1978), the Second Circuit held that a Medicaid fraud indictment and an income tax evasion indictment were not based on the "same act or transaction," nor did the indictments arise out of connected transactions, and accordingly, consolidation was improper.[1]

Conversely, in *United States v. Richards*, 94 F. Supp. 2d 304 (E.D.N.Y. 2000), the district court granted a motion to consolidate the separate indictments of two defendants who were allegedly involved in different "spokes" of the same conspiracy "wheel" – a drug trafficking scheme primarily based in Texas.  *Id*. at 307.  In its analysis, the court noted the government's representation that "its proof of these allegations against the two defendants 'will come, almost

---

[1]  It is important to note that *Halper* involved the question of consolidation for trial of separate indictments – one charging Medicaid fraud and one charging income tax evasion – brought against the *same* defendant, Halper, which is governed by a somewhat different analysis under Rule 8(a) of the Federal Rules of Criminal Procedure.  *See, e.g.*, *Halper* 590 F.2d at 428-33.

12

entirely, from the same' evidence." *Id*. at 308; *see also id*. at 309 ("in determining whether to allow separately indicted defendants to be tried together pursuant to Rule 13, the Court may look beyond the face of the indictment to the government's representations of its anticipated proof."). In granting the motion to consolidate the court stated:

> The balance clearly weighs in favor of joinder here. [The two defendants] are each charged with taking part in the same conspiracy to distribute cocaine and marijuana from Texas to various locations, including Knoxville and New York City. Defendants also interacted with some of the same drug and money couriers, three of whom may be key witnesses at a joint trial. Thus, the illegal acts allegedly committed by [the defendants] share "a substantial identity of facts or participants" and "arise out of a common scheme or plan."

*Id*. at 310 (quoting *Attanasio*, 870 F.2d at 814).  The Court further reasoned:

> Considerations of efficiency and judicial economy weigh heavily in favor of joinder. As noted, much of the case against [the defendants] will consist of describing the Texas-based conspiracy and defendants' roles in it, and much of the evidence will come from the same sources.  Where the offenses to be joined are alleged to be "acts or transactions constituting parts of a part of a common scheme or plan," [sic] the government "should not be put to the task of proving essentially the same set of facts more than once.  *Halper*, 590 F.2d at 430.

*Id*. at 310-11.

The Court also found no "serious risk that a joint trial would compromise a specific right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence."  *Id*. at 311 (citing *Zafiro v. United States*, 506 U.S. 534, 538 (1993); *United States v. Hernandez*, 85 F.3d 1023, 1029 (2d Cir. 1996)).  The Court stated:

> The danger of "prejudicial spillover" in this case is minimal at worst.  There are only two defendants and a total of five counts. *Cf*. [*United States v.*] *Cambino Valencia*, 609 F.2d 603 [(2d Cir. 1979)] (risk of jury confusion too high in trial of ten defendants, eleven counts, and multiple conspiracies). The defendants were allegedly involved in the same conspiracy, albeit in different "spokes."  To explain that conspiracy and defendants' roles in it, the government's case will require the introduction of a large amount of evidence that would be admissible at both of two

13

> separate trials if the Court were to deny joinder.  Plainly defendants will not be improperly prejudiced from such evidence by being tried together.
>
> To be sure, there will be evidence pertinent only to Richards or Tarantola individually.  But there is no indication that any such evidence is so inflammatory that its mere introduction against one defendant would deprive the other defendant of a specific trial right or prejudice the jury against him.  Moreover, the jury is hardly likely to be unable to sort out which portions of the trial record are relevant to which defendant.

*Id*. at 311.  In rejecting one defendant's claim that he would be prejudiced by an alleged "disparity in the evidence" between him and his co-defendant, the court further noted that "the Second Circuit has rejected similar arguments even where the disparity is far more marked than it can be in this case."  *Id*. at 312 (citing *United States v. Locascio*, 6 F.3d 924, 947 (2d Cir. 1993) ("joint trials involving defendants who are only marginally involved alongside those heavily involved are constitutionally permissible.").  Accordingly, the court found joinder proper and granted the motion to consolidate.

Similarly, in *United States v. Fancher*, 195 F. Supp. 634 (D. Conn. 1960), the district court granted a motion to consolidate the cases of a husband and wife who were charged in separate indictments which, except for one year, charged identical violations of income tax evasion.  The husband was charged in February 1960 on three counts of willful tax evasion covering the years 1953, 1954 and 1955, while the wife was indicted in September 1960 for willful tax evasion covering the years 1954 and 1955.  The tax returns at issue were joint returns signed and filed by both defendants.  The court noted that the "transactions referred to in the two indictments are therefore identical, except for the charge against [the husband] for 1953."  *Id*. at 635.  In granting the motion to consolidate, the district court stated:

14

The Federal Courts, in the administration of Rule 13 and its substantially similar predecessor, 18 U.S.C. former Sec. 557, have recognized as proper the consolidation of indictments far less factually integrated in their interrelationships than the ones presently in question.  It is evident that this case is one where the defendants "could have been joined in a single indictment."  There is no question that a consolidation order, therefore, is within the power of the court.

*Id*.  The Court reasoned:

In the instant case, the evidence introduced against both defendants will be, to all indications, identical.  Although the husband has been indicted for an earlier year, not charged against the wife, evidence concerning that year would be properly admissible against her as bearing on the question of intent.  It is hard to see any prejudice resulting to either defendant stemming from evidence which might be admissible against one but not the other.  Moreover, with such a similarity in all the evidence to be offered against both [defendants], it would be patently wasteful to require individual trials. In a very similar case, involving tax evasion charges against two business partners based on an alleged fraudulent partnership return, the 6th Circuit said in affirming the convictions: "One might almost say that it would have been an abuse of discretion to require separate trials as to the two defendants since it would have required unnecessary repetition of substantially the same evidence." *Turner v. United States*, [222 F.2d 926, 932 (6th Cir. 1955)].

*Id.*

The facts and circumstances of the instant case are much more similar to those in *Richards* and *Fancher* than *Halper*.  First, in *Halper*, the Second Circuit faced the question of consolidating two separate indictments – one charging Medicaid fraud and one charging income tax evasion – against the *same* defendant.  Here, with the exception of the money laundering charge against Ahmad, the two defendants involved face the same charges – including being charged in the same conspiracies – and they face nearly identical allegations.   Accordingly, here, unlike in *Halper*, there is a clear connection between the acts charged in the two indictments, and the alleged conduct upon which the charges in both indictments are based are inextricably intertwined.

Second, like the defendants in *Richards,* the defendants here are charged in the same conspiracies, the evidence in support of which will overlap, if not be nearly identical at trial. Indeed, Ahmad and Ahsan's charges are even more closely intertwined than the defendants in *Richards*, who were alleged to be in different "spokes" of the same conspiracy "wheel." Although Ahmad and Ahsan are alleged to have had different roles, they are alleged to have participated in the same conspiracies involving the same conduct and anticipated evidence. "The Federal Courts, in the administration of Rule 13 . . . have recognized as proper the consolidation of indictments far less factually integrated in their interrelationships than the ones presently in question." *Fancher*, 195 F. Supp. at 635.

Third, like the defendants in *Fancher*, the charges against Ahmad and Ahsan are identical, with the exception of one additional charge against Ahmad for which the anticipated evidence will nevertheless be co-extensive.

In short, but for the concern about the anticipated impact on the extradition proceedings that were already underway, the government could have – and would have – sought the return of a superseding indictment in Ahmad's case, adding Ahsan as an additional defendant.  Under these circumstances, consolidation is clearly appropriate under the Federal Rules of Criminal Procedure and relevant case law.

**Conclusion**

For the reasons set forth above, the government respectfully requests that the court consolidate the indictment in this case with the indictment in *United States v. Syed Talha Ahsan*, 3:06CR194(JCH), so that they may be tried together as though brought in a single indictment.

Respectfully submitted,

DAVID B. FEIN
UNITED STATES ATTORNEY

/s/
STEPHEN B. REYNOLDS
ASSISTANT UNITED STATES ATTORNEY
Federal Bar No. ct19105
United States Attorney's Office
1000 Lafayette Boulevard, 10th Floor
Bridgeport, Connecticut 06604
(203) 696-3000 / (203) 579-5575 (fax)
Stephen.Reynolds@usdoj.gov

/s/
RAYMOND F. MILLER
ASSISTANT UNITED STATES ATTORNEY
Federal Bar No. ct20451
157 Church Street, 23d Floor
New Haven, Connecticut 06510
(203) 821-3700 / (203) 773-5377 (fax)
Ray.Miller2@usdoj.gov

/s/
ALEXIS L. COLLINS
TRIAL ATTORNEY CTS-DOJ
Washington, D.C. Bar No. 474599
National Security Division
United States Department of Justice
Main Justice Building
950 Pennsylvania Ave, NW Room 7300
Washington, DC 20530
(202) 353-3862 / (202) 353-9836 (fax)
Alexis.Collins@usdoj.gov

## CERTIFICATION

I hereby certify that on October 12, 2012, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.


  /s/  
STEPHEN B. REYNOLDS  
ASSISTANT UNITED STATES ATTORNEY