UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| vs. | : | CRIMINAL NOS.  3:04cr301(JCH) and 3:06cr194(JCH) |
| BABAR AHMAD and  SYED TALHA AHSAN | : | March 15, 2013 |

JOINT MEMORANDUM IN OPPOSITION TO UNITED STATES' FIRST EX PARTE MOTION
FOR PROTECTIVE ORDER PURSUANT TO SECTION 4 OF CIPA

**INTRODUCTION**

Babar Ahmad and Syed Talha Ahsan make this joint submission in response to the government's submission pursuant to Section 4 of the Classified Information Procedures Act ("CIPA"), 18 U.S.C. App. 3 (2000).  As detailed below, it is respectfully requested that the Court deny the government's request to file its § 4 application *ex parte*, and compel disclosure thereof to cleared defense counsel.

In the alternative, it is respectfully submitted that the Court should (a) require the government to disclose its legal arguments (in support of its § 4 application) to cleared defense counsel; and/or (b) provide defense counsel an opportunity to present to the Court *ex parte* information that will significantly assist the Court in evaluating the government's § 4 submission, and whether it includes discoverable material or that is helpful to the defense.

**ARGUMENT**

A.    *The Principles Governing CIPA § 4*

Section 4 of CIPA permits the government to delete, summarize, or substitute specified items of classified information before providing the items on discovery, but only "upon a sufficient showing" that full production would pose a reasonable danger to national security.  18 U.S.C. App. 3 § 4.  *See also United States* v. *Abu-Jihaad,* 630 F.3d 102, 141 (2d Cir. 2010) (the "state secrets" privilege to withhold information applies under CIPA Section 4 only if "there is a reasonable danger that compulsion of the evidence will expose . . . matters which, in the interest of national security, should not be divulged").

–2–

In that context, the Second Circuit has developed a four-step test for evaluating a government application to delete or substitute information pursuant to § 4.  *See United States v. Aref*, 533 F.3d 72, 80 (2d Cir. 2008).

1.   ***Determining Whether the Information or Material is Classified***

The first step is determining whether the information is, in fact, classified.  "Classified information" is defined as "information or material that has been determined by the United States Government pursuant to an Executive order, statute, or regulation, to require protection against unauthorized disclosure for reasons of national security." 18 U.S.C. App. 3 § 1(a).  Classification may be established by the affidavit of a government official, as long as the affidavit "adequately describes the reasons for the information's classification and the harm that would result from disclosure." *United States* v. *Juma Khan,* 2010 WL 330241, at \*1 (S.D.N.Y. Jan. 20, 2010).

2.   ***Determining Whether the Material or Information is Discoverable***

If the material or information is deemed classified, the Court must next determine whether it is discoverable.  CIPA was not intended to, and does not, change the government's discovery obligations under *Brady* v. *Maryland,* 373 U.S. 83 (1963) or the Federal Rules of Criminal Procedure.  *See, e.g., United States v. Libby*, 429 F. Supp.2d 1, 7 (D.D.C. 2006) ("[CIPA] creates no new rights or limits on discovery of a specific area of classified information . . . [,] it contemplates an application of the general law of discovery in criminal cases to the classified information based on the sensitive nature of the classified information"), *quoting United States v. Yunis*, 867 F.2d 617, 621 (D.C. Cir. 1989).  Nor does CIPA alter the Federal Rules of Evidence.

Rather, the purpose of CIPA is to protect sensitive national security information, not to impede a defendant's fair trial rights.  *See United States* v. *Stewart,* 590 F.3d 93, 130 (2d Cir. 2009); *Aref*, 533 F.3d at 80 (government's privilege under CIPA "must give way" when classified information is helpful or material to the defense).  *See also United States v. Dumeisi*, 424 F.3d 566, 578 (7th Cir. 2005) (citation omitted).  In fact, in enacting CIPA, Congress warned that "the defendant should not stand in

-3-

a worse position, because of the fact that classified information is involved, than he would without the Act."  S. Rep. No. 96-823, at 9 (1980).  *See also, e.g., United States v. Poindexter*, 698 F. Supp. 316, 320 (D.D.C. 1988).

### 3.   *Determining Whether the "State Secrets" Privilege Applies*

When classified information is discoverable, the third step involves deciding whether the "state secrets" privilege applies because (1) exposure of the evidence would present a "reasonable danger" to national security; and (2) the privilege has been "lodged by the head of the department which has control over the matter, after actual personal consideration by that officer."  *Aref*, 533 F.3d at 80 (citation and internal quotation marks omitted).

### 4.   *Determining Whether the Information is Helpful or Material to the Defense*

If the Court decides the "state secrets" privilege applies, the final step is to determine whether the information is "helpful or material" to the defense, meaning it would be "useful to counter the government's case or to bolster a defense."  *Id*. (citation and internal quotation marks omitted).  In *Aref*, the Second Circuit explained that "to be helpful or material to the defense, evidence need not rise to the level that would trigger the Government's obligation under *Brady* v. *Maryland,* to disclose exculpatory information."  *Id*.  Rather, "[i]nformation can be helpful without being 'favorable' in the *Brady* sense."  *Id*. (citations and internal quotation marks omitted).

Thus, when information may be helpful or material to the defense, the classified material or information must be provided, but the Court may permit the government to make appropriate deletions or substitutions.  18 U.S.C. App. 3 § 4.  Section 4 authorizes a court to accept government pleadings – and by implication to conduct the entire four-step analysis set forth above – *ex parte*.  18 U.S.C. App. 3 § 4.

However, because § 4 states only that "[t]he court *may* permit the United States to make a request for such authorization in the form of a written statement to be inspected by the court alone[,]" *id*. (emphasis added), there exists no categorical impediment to disclosure or adversary proceedings.

-4-

Nothing in the statute permits the government to make such *ex parte* submissions as a matter of right. Rather, the use of the permissive "may" in the plain text of CIPA § 4, rather than the mandatory "shall," makes clear that courts retain discretion to reject *ex parte* submissions on a case-by-case basis.

Also, Congress patterned the *ex parte* provision of CIPA § 4 on a similar provision in Federal Rule of Criminal Procedure 16(d)(l), which governs protective orders in criminal cases. Rule 16(d)(1), too, does not use the words "must" or "shall." Instead, Rule 16(d)(l) states that a court "may" permit a party to show good cause for a protective order through an *ex parte* statement. Congress amended the language of proposed Rule 16(d)(l) from requiring *ex parte* proceedings at the request of a party to permitting such proceedings. The House Judiciary Committee observed that in determining whether to proceed *ex parte,* a court should "bear[] in mind that ex parte proceedings are disfavored and not to be encouraged." Rule 16, Fed.R.Crim.P., Advisory Committee Notes.[1]

In contrast, when Congress intends to *require ex parte* procedures in the national security setting, it knows how to articulate that mandate. For example, in the Foreign Intelligence Surveillance Act ("FISA"), Congress declared that the Court "shall" review FISA applications, orders, and related materials *ex parte* if the Attorney General submits an affidavit asserting that an adversarial proceeding would harm national security. *See* 50 U.S.C. § 1806(f) (2000).

---

[1] *See also* S. REP. No. 96-823, at 6 (1980) (discussing the relation between CIPA § 4 and Federal Rule of Criminal Procedure 16(d)(l)); *United States v. Pringle*, 751 F.2d 419, 427 (1st Cir. 1984) (stating the purpose of CIPA § 4: "[t]he legislative history clearly establishes that these sections [CIPA §§ 4 and 5] were intended to make explicit the protective orders allowed for limitation of discovery of classified information pursuant to Federal Rule of Criminal Procedure 16"), (*citing* S.REP. No. 96-823)) *vacated and remanded on other grounds sub nom, United States v. McAfee*, 479 U.S. 805 (1986). Because CIPA § 4 affords at least as much protection for classified information (more, according to the government) as Rule 16(d)(l), discussion of § 4 necessarily subsumes Rule 16(d)(l).

-5-

**B.**    ***The Court Should Deny the Government's Request for* Ex Parte *Treatment of its § 4 Application Absent a Demonstration of Exceptional Circumstances***

As a result of the foregoing analysis, rooted in the Fifth Amendment's Due Process Clause, coupled with the discussion below, is respectfully submitted that, absent exceptional circumstances, the government should not be permitted to file its § 4 application *ex parte*.  In addition to the discretion § 4 explicitly vests in the Court – discretion that is meaningless if exercised only in one direction – the traditions of and experience in the adversary system justify requiring disclosure of the § 4 application to cleared defense counsel.

**1.    Ex Parte *Proceedings Are Exceedingly Disfavored***

As a threshold matter, *ex parte* proceedings are exceedingly disfavored and threaten to violate a defendant's Due Process rights.  As the Sixth Circuit has cautioned, "[d]emocracies die behind closed doors."  *Detroit Free Press v. Ashcroft*, 303 F.3d 681, 683 (6th Cir. 2002).  As the Ninth Circuit has observed, "ex parte proceedings are anathema in our system of justice."  *Guenther v. Commissioner of Internal Revenue*, 889 F.2d 882, 884 (9th Cir. 1989), *appeal after remand*, 939 F.2d 758 (9th Cir. 1991).

By their very nature, *ex parte* proceedings impair the integrity of the adversary process and the criminal justice system.  As the Supreme Court has recognized, "'[f]airness can rarely be obtained by secret, one-sided determination of facts decisive of rights . . . . No better instrument has been devised for arriving at truth than to give a person in jeopardy of serious loss notice of the case against him and opportunity to meet it.'"  *United States* v. *James Daniel Good Real Prop.,* 510 U.S. 43, 55 (1993) (in absence of exigent circumstances, due process clause requires government to provide notice and meaningful opportunity to be heard before seizing real property subject to civil forfeiture), *quoting Joint Anti-Fascist Refugee Committee v. McGrath*, 341 U.S. 123, 170-72 (1951 (Frankfurter, J., *concurring*).

Similarly, in *United States* v. *Abuhamra,* 389 F.3d 309 (2d Cir. 2004), the Second Circuit reemphasized the importance of open, adversary proceedings, declaring that "[p]articularly where liberty is at stake, due process demands that the individual and the government each be afforded the opportunity not only to advance their respective positions but to correct or contradict arguments or

-6-

evidence offered by the other." *Id.* at 321. *See also id.* ("[e]*x parte* submissions may generally *not* be received in opposition to bail release because such submissions compromise both a defendant's due process right to a fair hearing and the public's interest in open criminal proceedings").

As the Ninth Circuit observed in the closely analogous context of a secret evidence case, "[o]ne would be hard pressed to design a procedure more likely to result in erroneous deprivations. . . . [T]he very foundation of the adversary process assumes that use of undisclosed information will violate due process because of the risk of error." *American-Arab Anti-Discrimination Committee v. Reno*, 70 F.3d 1045, 1969 (9th Cir. 1995) (internal quotation marks and citation omitted).

### 2.     The Court is Not Sufficiently Equipped to Act as Surrogate Defense Counsel

Thus, to ensure both the appearance and the reality of fairness, including with respect to fundamental Due Process rights, it is respectfully submitted that the Court should not permit the government to proceed *ex parte* without first making an adequate showing of the need for such drastic measures.  Given defense counsel's security clearance,[2] the government cannot plausibly contend that sharing its § 4 submission under the protections of a CIPA protective order would endanger national security.  *See United States v. Libby*, 429 F. Supp.2d at 4 (recognizing that "there are fewer threats to national security in disclosing classified documents to a defendant and his attorney who have obtained security clearances, than when disclosure is made to someone who has not received security clearances").

Indeed, barring cleared defense counsel from participating in discovery determinations cripples the adversary process without any commensurate benefit to national security.  Nor is there any distinction between the type of clearance granted to defense counsel, and to judicial personnel or even prosecutors generally.  Indeed, cleared defense counsel regularly review extremely sensitive classified information (via CIPA discovery) in the context of national security cases.

Nor are defense counsel clairvoyant, and able to predict and challenge blindly the government's position.  Without access to either the classified evidence or the government's arguments for non-

---

[2] Joshua Dratel has a valid secret clearance.

-7-

production, defendants will be deprived of their right to counsel at this stage, and of the other fair trial rights to which he is constitutionally entitled. Yet without defense counsel's participation in the process of evaluating the material, and even crafting substitutions, how can the defendant be said to have been placed in the same position as would access to either witnesses or the specific classified information?

Also, *ex parte* proceedings with respect to discovery also present an overwhelming danger of erroneous decisions. Despite what defense counsel knows will be the Court's best efforts, the Court cannot properly function as defendants' surrogate advocate. The Court cannot possess sufficient appreciation for defense theories in a particular case, particularly at this phase of the case, at which the Court would not have sufficient knowledge and understanding of critical facts, factual issues, or contentions, or knowledge of impeachment issues, the nature of government and defense exhibits, and perhaps even the defendant's testimony.

Also, this case is considerably more complicated than an ordinary case, thus irremediably impairing further a court's ability to play the role of defense counsel. Thus, the relevance or materiality, or the exculpatory character of evidence, is not readily apparent except to those with intimate knowledge of the factual details as well as the full scope of discovery.

Thus, adherence to the adversary process would have considerable salutary effects on the accuracy of decision-making in this instance. It is not the Court's function, but defense counsel's, to be the vigorous advocate on behalf of defendants and point out any deficiencies in the government's response.

Indeed, given the volume of discovery, the variety and complexity of the charges in the Indictment, the language and geographic diversity of the evidence and witnesses, or the charges' technical complexity, it would be impossible for the Court to make the appropriate determination regarding the government's motion to preclude production of material absent a meaningful and substantive contribution from defense counsel. That cannot occur if the government's entire application is *ex parte*.

-8-

In *United States v. Abu Marzook*, 412 F. Supp.2d 913 (N.D. Ill. 2006), in deciding whether to close a hearing to the public because of potential classified information, the District Court explained that

> [i]t is a matter of conjecture whether the court performs any real judicial function when it reviews classified documents in camera.  Without the illumination provided by adversarial challenge and with no expertness in the field of national security, the court has no basis on which to test the accuracy of the government's claims.

*Id*. at 921 (internal citation and quotation omitted).

Likewise, in *Alderman v. United States*, 394 U.S. 165 (1969), the Court addressed the procedures to be followed in determining whether government eavesdropping in violation of the Fourth Amendment contributed to its case against the defendants.  The Court rejected the government's suggestion that the district court make that determination *ex parte*, observing that

> [a]n apparently innocent phrase, a chance remark, a reference to what appears to be a neutral person or event, the identity of a caller or the individual on the other end of a telephone, or even the manner of speaking or using words may have special significance to one who knows the more intimate facts of an accused's life.  And yet that information may be wholly colorless and devoid of meaning to one less well acquainted with all relevant circumstances.

*Id*. at 182.

For the reasons outlined above, courts necessarily lack familiarity with "the information contained in and suggested by the materials[,]" *see id*. at 184, that the government seeks to withhold. The Court, which has not had opportunity to review the discovery, consult with the defense, or otherwise investigate the facts of this case, cannot be expected to surmise the factual nuances of the defense.  As the Supreme Court has recognized, "[i]n our adversary system, it is enough for judges to judge.  The determination of what may be useful to the defense can properly and effectively be made only by an advocate."  *Dennis v. United States*, 384 U.S. 855, 875 (1966).

Accordingly, it is respectfully submitted that the government should not be permitted to file its § 4 application *ex parte*, and that it should instead be disclosed to cleared defense counsel.

-9-

**C.**    ***In the Alternative, the Government Should be Compelled to Disclose to Cleared Defense Counsel its Legal Arguments in Support of its § 4 Application***

In the alternative, should Your Honor determine a need to review the government's § 4 submission *in camera* in whole or in part, it is respectfully requested that the government be compelled to disclose to cleared defense counsel its arguments in support of non-production, and an adversarial hearing addressing those arguments should be conducted. There is no sensible reason why disclosure of the government's arguments would implicate national security, especially when they could be provided to defense counsel subject to an appropriate protective order.

Such practice is not inconsistent with the Second Circuit's opinion in *Abu-Jihaad*. While in that case the Court noted that "where the government moves to withhold classified information from the defense, an adversarial hearing with defense knowledge would defeat the very purpose of the discovery rules[,]" 630 F.3d at 142, *citing Aref*, 533 F.3d at 81 (internal quotation marks omitted),[3] the Court nevertheless acknowledged that trial judges retain discretion to reject *ex parte* filings under § 4. Indeed, in *Abu-Jihaad* the Court characterized the defense's opposition as a "challenge to the district court's exercise of *discretion* to proceed *ex parte*," and reviewed the District Court's decision to accept an *ex parte* filing under an abuse of *discretion* standard. *Id*. (emphasis added).

In *United States* v. *Libby*, 429 F. Supp.2d 18 (D.D.C. 2006), *amended by* 429 F. Supp.2d 46 (D.D.C. 2006), the District Court also recognized its discretion to reject *ex parte* § 4 filings. In *Libby*, the Court established a procedure for evaluating the necessity of an *ex parte* § 4 filing, requiring that any government submission under § 4 must necessarily include a declaration or affidavit, executed by an intelligence community official with the requisite classification authority, that (1) describes the reasons for the classification of the information at issue; (2) sets forth the potential harm to national security that could result from its disclosure; and (3) explains why the defense, based upon appropriate classification guidelines, does not have a 'need-to-know the information in its unaltered form." *Id*. at 25.

---

[3]  *See also United States v. Innamorati*, 996 F.2d 456, 488 (1ˢᵗ Cir. 1993).

-10-

The judge added that, "[u]pon receipt of such a filing, the Court will review it and determine whether the filing should remain *ex parte*, or whether all or some portion of it should [be] provided to the defendant." *Id*. Similarly, in *Bostan v. Obama*, 674 F. Supp.2d 9, 27 (D.D.C. 2009), a Guantanamo Bay *habeas* case, the Court adopted the same procedure for evaluating *ex parte* submissions under § 4.

**D.**   ***Defense Counsel Should be Permitted to Make an* Ex Parte** *Presentation to the Court Regarding How Classified Material May be Helpful and Material to the Defense*

Thus, the Court possesses discretion to reject the government's *ex parte* § 4 filing absent a demonstration of exceptional circumstances.   If, assuming *arguendo*, the Court accepts the government's § 4 application *ex parte*, it is respectfully requested that at least the government's legal arguments in support of its application be disclosed to cleared counsel (under an appropriate protective order, if necessary), thereby enabling defense counsel to present a meaningful argument in opposition.

Also, if the § 4 application is not disclosed to defense counsel, it is respectfully requested that defense counsel, in order to assist the Court in making its § 4 determination(s), be permitted an *in camera* and *ex parte* opportunity to present to the Court reasons why categories of potentially classified evidence may be relevant, material, and/or helpful to the defense in this case.  *See, e.g., Libby*, 429 F. Supp.2d at 26 (allowing the defendant to submit an *ex parte* affidavit detailing the defense).

## CONCLUSION

Accordingly, for the foregoing reasons,  Mr. Ahmad and Mr. Ahsan respectfully request that the Court grant the above relief in its entirety.

–11–

Respectfully submitted,


Dated: March 15, 2013


/s/ Terence S. Ward                           /s/ Richard A. Reeve

| | |
|---|---|
| Terence S. Ward | Richard A. Reeve |
| Kelly M. Barrett | Anand Balakrishnan |
| Attorneys for Babar Ahmad | Attorneys for Syed Talha Ahsan |
| Office of the Federal Defender | Sheehan and Reeve |
| 10 Columbus Blvd., Fl 6 | 139 Orange Street, Suite 301 |
| Hartford, CT 06106 | New Haven, CT 06510 |
| (860) 493-6260 | (203) 787-9026 |
| Bar Nos.: ct00023,  ct27410 | Bar No. ct05084 |


/s/ Joshua L. Dratel

Joshua L. Dratel
Attorney for Babar Ahmad
Law Offices of Dratel & Mysliwiec
2 Wall Street
Third Floor
New York, New York 10005
212-732-0707
*Admitted Pro Hac Vice*


CERTIFICATE OF SERVICE


      I HEREBY CERTIFY that on March 15, 2013, a copy of the foregoing Memorandum in Opposition to United States' First Ex Parte Motion for Protective Order Pursuant to Section 4 of CIPA was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.


                                       /s/ Kelly M. Barrett
                                       Kelly M. Barrett